IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| Kendrick Watson, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| CITY OF MEMPHIS, OFFICER THERMAN RICHARDSON, Individually and in his Official Capacity and OFFICER JOHNATHAN OVERLY, Individually and in his Official Capacity, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**Jury Trial is Demanded**

_____

**Complaint**

_____

Comes now Plaintiff, and asserts the following causes of action:

**Introduction**

1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom or usage of a right, privilege, equal protection, and immunity secured to Plaintiff by the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C.§ 1983, False Imprisonment, False Arrest, Fraudulent Concealment, Negligence, and Malicious Harassment.

2. In addition, this action is brought pursuant to the Tennessee Governmental Tort Liability Act.

3. Headings used in this Complaint is for convenience purposes only, as Plaintiff is alleging any and all causes of action consistent with the information provided in the entirety of this Complaint.

**Jurisdiction and Parties**

4. Plaintiff was a resident in Memphis, Tennessee, Shelby County, at all relevant times involved in this cause of action.

5. Defendant, City of Memphis, is responsible for the administration and governance of the Memphis Police Department, which is located in Shelby County, Tennessee.

6. Defendant, Officer Therman Richardson is a Memphis Police officer employed by the Memphis Police Department, which is located in Shelby County, Tennessee.

7. Defendant, Officer Johnathan Overly is a Memphis Police officer employed by the Memphis Police Department, which is located in Shelby County, Tennessee.

8. The events complained of took place in Shelby County, Tennessee.

9. This Court has jurisdiction under 28 USC 1331, federal question jurisdiction.

**Facts and Causes of Action**

10. Defendants worked together as it related to the prosecution of Plaintiff, sharing and exchanging all relevant information among themselves, as it related to the prosecution of Plaintiff.

11. Defendants pursued Plaintiff based on his race, as an African American.

12. Defendants pursued Plaintiff based on their belief that they needed to take him off of the streets by any means necessary.

13. In January of 2014, three indictments were returned against Plaintiff.

14. The indictments were returned based on the evidence, and information provided by Defendants to the grand jury.

15. Prior to any indictments, Defendant Officers worked together with Defendant City,

in an attempt to build a case against Plaintiff.

16. Plaintiff was charged with conspiracy drug charges, kidnapping, money laundering, and other related charges.

17. Defendants created evidence, and falsified documents, and used that evidence to incarcerate Plaintiff, and to cause Plaintiff to plead guilty.

18. Specifically, Defendants represented that Plaintiff, and Plaintiff's alleged co-conspirators, were in possession of drugs that in reality, never existed.

19. Defendants also falsified the amounts of drugs that it represented that it had, and repeatedly increased the amounts in order to enhance the charges.

20. In addition, Plaintiff was never actually provided with any of the drugs which were alleged to be tagged into evidence, and Plaintiff, to this date, has never seen any of the alleged drugs that were taken into evidence.

21. Plaintiff was entitled to see this information, and requested to see the information, but the information was never provided to him.

22. Furthermore, Defendants relied on purported text message conversations of purported drug transactions, and drug related conversations, in order to cause Plaintiff to plead guilty, which he did in July of 2017.

23. Defendants also relied on this information to secure the indictments against Plaintiff.

24. Defendants also relied on wiretaps to secure the indictments against Plaintiff.

25. The wiretaps were either illegally obtained, or obtained after securing a search warrant based on false, or illegal information.

26. Defendants never informed the judge, prior to securing the wiretaps, that it was

based on false or illegal information.

27. Defendants never informed the grand jury that they were securing indictments based on false or illegal information.

28. Plaintiff was never provided any evidence from Defendants, informing him that the evidence against him was false, fabricated, or obtained illegally.

29. Plaintiff, under the United Stated Constitution, and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), was entitled to this information, even if he never asked for it.

30. However, in this case, Plaintiff repeatedly requested the information, from the year 2014, all the way up until this date.

31. To this date, Plaintiff has still not been provided with all of this information from Defendants.

32. Defendants have actively concealed this information from Plaintiff, even though they are aware that Plaintiff has a constitutional right to the information.

33. Plaintiff has no way of retrieving the information on his own, as the information is solely contained by Defendants, and is not available to the public.

34. On April 2, 2020, Plaintiff discovered, and received proof that Defendants were fabricating evidence, and received documentation from Celitria Watson, reflecting that Defendants falsely made representations that Plaintiff as a co-conspirator, was in possession of drugs that did not exist.

35. Celitria Watson received this information from Defendant City, through their attorney.

36. Then, on September 17, 2020, Plaintiff was made aware through April Malone, that Defendants created false text messages, which were used to cause Plaintiff to plead

guilty.

37. This information was provided by way of testimony from Defendant City, on September 17, 2020.

38. Prior to September 17, 2020, Plaintiff had the false text messages, but was not made aware as to who created them.

39. Prior to September 17, 2020, it had always been represented that the false text messages were provided to Defendants from the telephone company.

40. To this date, Defendants have not provided Plaintiff with any legitimate text messages from a phone company, reflecting what was in the document that Defendants created.

41. Defendants, while depriving Plaintiff of this information, were acting under the color of law.

42. Plaintiff had a constitutional right to this information as part of his Discovery which he repeatedly requested.

43. This constitutional right of Plaintiff that was violated is a clearly established right.

44. Defendant Officers initiated the prosecutions against Plaintiff, and participated in the decision to prosecute Plaintiff.

45. Defendant Officers created either all or some of the false documents used as the basis to prosecute Plaintiff.

46. Defendant City was aware of this, and allowed Defendant Officers to proceed with this conduct.

47. Defendant City also kept this information from Plaintiff, and intentionally withheld it so that the prosecution and conviction of Plaintiff could occur.

48. Defendant City has a policy, practice, or custom, which allows its attorney to decide if it will release exculpatory evidence to individuals charged with criminal offenses, and Defendant City makes that determination, regardless of what the law states that the accused is entitled to.

49. Defendant City negligently supervises its officers, and elects not to review their conduct relating to the way and manner in which they conduct investigations.

50. Defendants used the illegal, false, and fabricated evidence as the basis to get search warrants against Plaintiff.

51. Defendants used the illegal, false, and fabricated evidence as the basis to show probable cause to arrest Plaintiff.

52. Defendants used the illegal, false, and fabricated evidence as the basis to secure arrest warrants against Plaintiff.

53. Plaintiff alleges that pursuant to T.C.A. 29-20-20 (a) municipalities and governmental entities are generally immune from suit.

54. Plaintiff alleges however that based upon the conduct of the governmental employees, Defendant City, and pursuant to T.C.A. 29-20-205 (1) (2), the Tennessee Governmental Tort Liability Act immunity is removed from Defendant City.

55. Based on Defendants use of false evidence, Plaintiff had his personal property, and vehicles seized.

56. Defendants also instructed, and contacted the Mississippi Police Department, and had Plaintiff's possessions that were located in Mississippi taken as well.

57. Defendants intentionally refused to disclose to the grand jury, or any of the judges who arrested Plaintiff, or issued search warrants in the cases referenced, that

Plaintiff had multiple legal businesses that were very profitable, and instead, made representations that the money confiscated was from illegal drug activity.

58. Defendant City was aware that the conduct engaged in by Defendant Officers violated the training, policies, and procedures that were written, but Defendant City supported the conduct and never disciplined Defendant Officers.

59. This is due to the fact that the officers were acting consistent with Defendant City's expectations.

60. Defendants conduct has caused Plaintiff to be incarcerated, and convicted, based on violations of State and Constitutional law.

61. Plaintiff suffered emotional distress, mental anguish, and was deprived of his liberty.

62. Plaintiff, based on the misrepresentations and fraud by Defendants, had his personal possessions confiscated.

63. Plaintiff is seeking punitive damages to be determined by a jury, but is requesting damages of $10,000,000.

64. Plaintiff is seeking compensatory damages to be determined by a jury at a jury trial, but Plaintiff is requesting compensatory damages of $5,500,000.

65. Plaintiff is also seeking any further relief as allowed by law.

Respectfully Submitted,

s/   Terrell Tooten
BPR 028506
1160 Vickery Ln Ste 2
Cordova, TN, 38016
(901) 304-8539 office
(901) 347-8776 fax
x99tooten@gmail.com